*PRELIMINARY PRINT*

VOLUME 602 U. S. PART 1

PAGES 143–153

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

MAY 23, 2024

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

Syllabus

## COINBASE, INC. *v.* SUSKI ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 23–3.   Argued February 28, 2024—Decided May 23, 2024

The dispute here involves a conflict between two contracts executed by petitioner Coinbase, Inc., operator of a cryptocurrency exchange platform, and respondents, who use Coinbase.  The first contract—the Coinbase User Agreement that respondents agreed to when they created their accounts—contains an arbitration provision with a delegation clause.  Per this provision, an arbitrator must decide all disputes under the contract, including whether a given disagreement is arbitrable. The second contract—the Official Rules for a promotional sweepstakes respondents entered—contains a forum selection clause providing that California courts "shall have sole jurisdiction of any controversies regarding the [sweepstakes] promotion."  Respondents ultimately filed a class action in the U. S. District Court for the Northern District of California, alleging that the sweepstakes violated various California laws. Coinbase moved to compel arbitration based on the User Agreement's delegation clause.  The District Court determined that the Official Rules' forum selection clause controlled the parties' dispute and accordingly denied the motion.   The Ninth Circuit affirmed.

*Held*: Where parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs.   Pp. 147–152.

   (a) The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter of contract."   *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U. S. 63, 67.   Given that arbitration agreements are simply contracts, the first question in any arbitration dispute must be: What have these parties agreed to?  Parties can form multiple levels of agreements concerning arbitration, and thus can have different kinds of disputes.   At a basic level, parties can agree to send the merits of a dispute to an arbitrator.   The merits of a dispute is a first-order disagreement.   The parties may also have a second-order dispute—"whether they agreed to arbitrate the merits"—as well as a third-order dispute—"who should have the primary power to decide the second matter."   *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 942.   Pp. 147–149.

   (b) This case involves a fourth kind of dispute: What happens if parties have multiple agreements that evidence a conflict over the answer

to the third-order question of who decides arbitrability? That question can be answered as to these parties only by determining which contract applies. Homing in on the conflict between the delegation clause in the first contract and the forum selection clause in the second, the question becomes whether the parties agreed to send the given dispute to arbitration. And that question must be answered by a court.

Coinbase asks the Court to revisit the Ninth Circuit's bottom-line conclusion below, but its arguments are unpersuasive. First, Coinbase argues that the Ninth Circuit should have applied the so-called severability principle—under which "an arbitration [or delegation] provision is severable from the remainder of the contract," *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 445–446—and considered only arguments specific to the User Agreement's delegation provision. But the severability rule does not require that a party challenge *only* the arbitration or delegation provision. Rather, where a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a court must address that challenge. *Rent-A-Center*, 561 U. S., at 71.

Coinbase next contends that, as a matter of California state law, the Ninth Circuit erroneously held that the Official Rules' forum selection clause superseded the User Agreement's delegation provision. That issue is outside the scope of the question presented, and the Court does not address it.

Finally, the Court does not believe its ruling here will invite chaos by facilitating challenges to delegation clauses. Regardless, where the parties have agreed to *two* contracts, a court must decide which contract governs. To hold otherwise would be to impermissibly elevate a delegation provision over other forms of contract. See *ibid.* Pp. 149–152.

55 F. 4th 1227, affirmed.

JACKSON, J., delivered the opinion for a unanimous Court. GORSUCH, J., filed a concurring opinion, *post*, p. 152.

*Jessica L. Ellsworth* argued the cause for petitioner. With her on the briefs were *Neal Kumar Katyal, Nathaniel A. G. Zelinsky, Kathleen Hartnett,* and *Bethany Lobo.*

*David J. Harris, Jr.,* argued the cause for respondents. With him on the briefs was *Gerilyn R. Harris.**

———————

*Briefs of *amici curiae* urging reversal were filed for the Atlantic Legal Foundation by *Lawrence S. Ebner, Felix Shafir, John F. Querio,* and *Scott*

JUSTICE JACKSON delivered the opinion of the Court.

The parties in this case executed two contracts. The first contained an arbitration provision with a delegation clause; per that provision, an arbitrator must decide all disputes under the contract, including whether a given disagreement is arbitrable. The second contract contained a forum selection clause, providing that all disputes related to that contract must be decided in California courts. Coinbase insists that the first contract's delegation clause established the terms by which all subsequent disputes were to be resolved, so the arbitrability of a contract-related dispute between these parties is a matter for the arbitrator to decide. But respondents maintain—and the Ninth Circuit held—that the second contract's forum selection clause superseded that prior agreement. This case thus presents the following question: When two such contracts exist, who decides the arbitrability of a contract-related dispute between the parties—an arbitrator or the court?

Basic legal principles establish the answer. Arbitration is a matter of contract and consent, and we have long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes. Here, then, before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—*i. e.*, which contract controls. Accordingly, we affirm the judgment of the Ninth Circuit.

---

*P. Dixler*; for the Chamber of Commerce of the United States of America et al. by *Andrew J. Pincus*, *Archis A. Parasharami*, *Daniel E. Jones*, *Jennifer B. Dickey*, *Jonathan D. Urick*, *Thomas Pinder*, and *Anastasia P. Boden*; and for Anthony Michael Sabino, *pro se*.

Briefs of *amici curiae* urging affirmance were filed for the American Association for Justice by *Robert S. Peck*, *Sean Domnick*, and *Jeffrey R. White*; for Legal Scholars by *Glenn E. Chappell*, *Hassan A. Zavareei*, and *Spencer S. Hughes*; and for Public Citizen by *Scott L. Nelson* and *Allison M. Zieve*.

I

Coinbase, Inc., operates a cryptocurrency exchange platform. Respondents are users of Coinbase. To buy and sell cryptocurrency on the platform, users create accounts.

The first relevant contract is the Coinbase User Agreement that respondents agreed to when they created their accounts. The User Agreement contains a provision that the contract calls the Arbitration Agreement. 1 App. 218. The Arbitration Agreement includes a delegation clause:

"This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. *All such matters shall be decided by an arbitrator and not by a court or judge.*" *Ibid.* (emphasis added).

Respondents each agreed to the User Agreement, complete with the above-quoted arbitration language. If that were the only contract at issue, we would not be deciding this case, since the Arbitration Agreement quite clearly sends to arbitration disputes between Coinbase and its users, including disputes about arbitrability.

These parties, though, agreed to a second contract. Coinbase offered a sweepstakes that users could enter for a chance to win a cryptocurrency called Dogecoin. Respondents each submitted entries in June 2021, and in doing so, agreed to the Official Rules of the sweepstakes. Unlike the User Agreement, the Official Rules contained a forum selection clause, which provided:

"The California courts (state and federal) shall have sole jurisdiction of any controversies regarding the [sweepstakes] promotion and the laws of the state of California shall govern the promotion. Each entrant waives any and all objections to jurisdiction and venue in those

courts for any reason and hereby submits to the jurisdiction of those courts."   *Id.*, at 108 (capitalization altered).

Thus, after respondents entered the sweepstakes, the parties had executed two contracts: the User Agreement, which sent disputes about arbitrability to arbitration, and the Official Rules, which appeared to send disputes to California courts.

Once the sweepstakes concluded, the conflict between these contracts came to a head.   Respondents filed a class-action complaint in the U. S. District Court for the Northern District of California, alleging that the sweepstakes violated California's False Advertising Law, Unfair Competition Law, and Consumer Legal Remedies Act.   Invoking the User Agreement and its delegation clause, Coinbase moved to compel arbitration.

The District Court denied Coinbase's motion.   It reasoned that deciding which contract governed was a question for the court; that the User Agreement's arbitration provision conflicted with the forum selection clause in the Official Rules; and that, under California contract law, the Official Rules superseded the User Agreement.   The District Court therefore determined that the Official Rules' forum selection clause controlled, so the parties' sweepstakes-related dispute was not subject to arbitration.   The Ninth Circuit affirmed. 55 F. 4th 1227 (2022).

We granted certiorari to answer the question of who—a judge or an arbitrator—should decide whether a subsequent contract supersedes an earlier arbitration agreement that contains a delegation clause.   601 U. S. —— (2023).

II

The Federal Arbitration Act (FAA) "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U. S. 63, 67 (2010). As a result, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or

in equity for the revocation of any contract." 9 U. S. C. §2. If a court is "satisfied that the making of the agreement for arbitration . . . is not in issue," it must send the dispute to an arbitrator. §4. "The FAA thereby places arbitration agreements on an equal footing with other contracts." *Rent-A-Center*, 561 U. S., at 67.

Given that arbitration agreements are simply contracts, "'[t]he first principle that underscores all of our arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'" *Lamps Plus, Inc.* v. *Varela*, 587 U. S. 176, 184 (2019) (quoting *Granite Rock Co.* v. *Teamsters*, 561 U. S. 287, 299 (2010); some alterations in original). Arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 943 (1995). Consequently, the first question in any arbitration dispute must be: What have these parties agreed to?

As relevant here, parties can form multiple levels of agreements concerning arbitration. At a basic level, parties can agree to send the merits of a dispute to an arbitrator. They can also "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U. S. 63, 65 (2019). An agreement to allow an arbitrator to decide whether a dispute is subject to arbitration—*i. e.*, its arbitrability—"is simply an additional, antecedent agreement . . . , and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U. S., at 70.

From these different kinds of agreements, it follows that parties can also have different kinds of disputes. A contest over "the merits of the dispute" is a first-order disagreement, *First Options*, 514 U. S., at 942 (emphasis deleted), the resolution of which depends on the applicable law and relevant facts. The parties may also have a second-order dispute—"whether they agreed to arbitrate the merits"—as

well as a third-order dispute—"who should have the primary power to decide the second matter." *Ibid.* (emphasis deleted). Under contract principles, these second- and third-order questions are also matters of consent. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id.*, at 943 (citations omitted).

We ask who has the power to decide arbitrability because "a party who has not agreed to arbitrate will normally have a right to the court's decision about the merits of its dispute." *Id.*, at 942. Thus, we have explained that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.*, at 944 (quoting *AT&T Technologies, Inc.* v. *Communications Workers*, 475 U. S. 643, 649 (1986); some alterations in original). "[B]efore referring a dispute to an arbitrator," therefore, "the court determines whether a valid arbitration agreement exists." *Henry Schein*, 586 U. S., at 69.

### III

In prior cases, we have addressed three layers of arbitration disputes: (1) merits, (2) arbitrability, and (3) who decides arbitrability. This case involves a fourth: What happens if parties have multiple agreements that conflict as to the third-order question of who decides arbitrability? As always, traditional contract principles apply.

Coinbase says the User Agreement's delegation clause controls. Respondents counter that the Official Rules' forum selection clause superseded that agreement. If Coinbase is right that the User Agreement's delegation clause was meant to govern all agreements moving forward, then the parties agreed to arbitrate all subsequent arbitrability disputes. If respondents are correct that the Official Rules' forum selection clause superseded the User Agreement's del-

egation clause, then the parties meant to send sweepstakes disputes—including those over arbitrability—to California courts.

Thus, the question whether these parties agreed to arbitrate arbitrability can be answered only by determining which contract applies. In other words, "the substance of the parties' supersession dispute is 'whether there is an agreement to arbitrate.'" *Field Intelligence Inc.* v. *Xylem Dewatering Solutions Inc.*, 49 F. 4th 351, 356 (CA3 2022). When we home in on the conflict between the delegation clause in the first contract and forum selection clause in the second, the question is whether the parties agreed to send the given dispute to arbitration—and, per usual, *that* question must be answered by a court.

Coinbase seems to concede this point. See Reply Brief 12 ("Coinbase agrees that the Court can and should assess whether the official rules displaced the parties' consent to have an arbitrator decide arbitrability"). Nevertheless, it offers a slew of reasons why we should revisit the Ninth Circuit's bottom-line conclusion. None of these reasons persuades us to do so.

First, Coinbase invokes the so-called severability principle. Under the severability principle, "an arbitration [or delegation] provision is severable from the remainder of the contract," and "unless the challenge is to the arbitration [or delegation] clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 445–446 (2006). Coinbase argues that, pursuant to this principle, the Ninth Circuit should have isolated the User Agreement's delegation provision and considered only arguments specific to that provision.

Assuming without deciding that the severability principle is implicated here, it is nonetheless satisfied. The severability principle establishes that a party seeking to avoid arbitration must directly challenge the arbitration or delegation

clause, not just the contract as a whole. But this rule does
not require that a party challenge *only* the arbitration or
delegation provision. Rather, where a challenge applies
"equally" to the whole contract and to an arbitration or dele-
gation provision, a court must address that challenge.
*Rent-A-Center*, 561 U. S., at 71. Again, basic principles of
contract and consent require that result. Arbitration and
delegation agreements are simply contracts, and, normally,
if a party says that a contract is invalid, the court must ad-
dress that argument before deciding the merits of the con-
tract dispute. So too here. "If a party challenges the va-
lidity . . . of the precise agreement to arbitrate at issue, the
federal court *must* consider the challenge before ordering
compliance with that [arbitration] agreement." *Ibid.* (em-
phasis added).*

Next, Coinbase contends that, as a matter of California
law, the Ninth Circuit was wrong to hold that the Official
Rules' forum selection clause superseded the User Agree-
ment's delegation provision. That issue is outside the scope
of the question presented, and we do not address it. We
took this case to decide whether, under the FAA, a court or
an arbitrator decides which of the two contractual provisions
controls. We decline to consider auxiliary questions about
whether the Ninth Circuit properly applied state law.

———————

*Coinbase's argument that respondents failed to challenge the delega-
tion provision in the District Court is itself forfeited. Coinbase did not
raise that argument before the Ninth Circuit, and the Ninth Circuit did
not address it. That argument is also meritless: When opposing Coin-
base's motion to compel arbitration in the District Court, respondents
pointed out that "courts can refer the question of arbitrability to an arbi-
trator only 'if a valid [arbitration] agreement *exists*,'" and, "since Official
Rules ¶10 'superseded' the parties' prior arbitration agreements, any prior
agreement to arbitrate *Sweepstakes*-related disputes no longer exists." 2
App. 451 (alteration in original). Respondents' District Court challenge
was "directed specifically to" the delegation provision. *Rent-A-Center*,
561 U. S., at 71. Thus, this case is not like *Rent-A-Center*, where the
plaintiff "did [not] even mention the delegation provision." *Id.*, at 72.

Finally, Coinbase contends that our approach will invite chaos by facilitating challenges to delegation clauses. We do not believe that such chaos will follow. In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration. But, where, as here, parties have agreed to *two* contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs. To hold otherwise would be to impermissibly "'elevate [a delegation provision] over other forms of contract.'" *Ibid.* (quoting *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395, 404, n. 12 (1967)).

\*          \*          \*

We conclude that a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second. The Ninth Circuit's judgment is affirmed.

*It is so ordered.*

JUSTICE GORSUCH, concurring.

Often, parties choose to send disputes arising from their contracts to an arbitrator instead of a court. *Ante*, at 148; see 9 U. S. C. §2. Just as often, it seems, parties later wind up disagreeing about whether a particular dispute is subject to that arbitration agreement. Sometimes a court can resolve their disagreement about the "arbitrability" of a particular dispute. But sometimes not. For parties can agree to send arbitrability questions to an arbitrator too, through what this Court calls a delegation clause. *Ante*, at 148–149; *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U. S. 63, 65 (2019).

What happens when (as in this case) the parties have two contracts, one with a delegation clause, a second without, and

GORSUCH, J., concurring

a dispute later arises? Like everything else in this area, it depends on what the parties have agreed. *Ante*, at 148. Sometimes, a court may conclude that the parties' agreements are best read as leaving for the court the task of resolving the arbitrability of the dispute at hand. But sometimes, the parties' agreements may be best read as vesting that power in an arbitrator. Just imagine a master contract providing that "all disputes arising out of or related to this or future agreements between the parties, including questions concerning whether a dispute should be routed to arbitration, shall be decided by an arbitrator." Absent some later amendment, a provision like that would seem to require a court to step aside. See *ante*, at 152.

It is not clear to me whether the Ninth Circuit appreciated this point. But nor does that matter. Our decision today recognizes—and stresses—that "[a]rbitration is a matter of contract," *ante*, at 145, and parties can "'agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes,'" *ante*, at 148 (quoting *Henry Schein*, 586 U. S., at 65). Notably, too, the Court does not endorse the reasoning in the Ninth Circuit's opinion, let alone its state contract law analysis of the parties' agreements. See *ante*, at 151. Instead, the Court simply reaffirms well-established principles about the primacy of the parties' agreements when it comes to arbitration, *ante*, at 148, and the Ninth Circuit's "bottom-line conclusion" that a court had to decide whether and to what extent the parties here reached "an agreement" to have an arbitrator resolve the question of arbitrability, *ante*, at 145, 150. With that understanding, I am pleased to concur.

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None